# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

FRANK J. THACKER,

        Petitioner,         :        Case No. 1:21-cv-704

  - vs -                           District Judge Matthew W. McFarland
                                    Magistrate Judge Michael R. Merz

WARDEN, Noble Correctional
  Institution,

                                            :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This habeas corpus case, brought *pro se* by Petitioner Frank J. Thacker under 28 U.S.C. § 2254, seeks relief from Thacker's 2018 conviction in the Common Pleas Court of Lawrence County. It is before the Court on Petitioner's Objections (ECF No. 24) to the undersigned's Report and Recommendation recommending that the Petition be dismissed with prejudice (the "Report," ECF No. 20). District Judge McFarland has recommitted the case to the undersigned for reconsideration in light of the Objections (ECF No. 25).

The Lawrence County Grand Jury indicted Thacker on three counts of rape in violation of Ohio Revised Code § 2907.02(A)(2), all first-degree felonies; one count of burglary in violation of Ohio Revised Code § 2911.12(A)(1), a second-degree felony; two counts of kidnapping in violation of Ohio Revised Code § 2905.01(A)(3) and (A)(4), second-degree felonies; and one count of abduction in violation of Ohio Revised Code § 2905.02(A)(1), (B), a third-degree felony.

1

All seven counts included firearm specifications.

A jury convicted Thacker on one count each of rape, burglary, kidnapping, and abduction with a firearm specification, and not guilty on the two remaining rape counts, the one remaining kidnapping count, and the remaining firearm specifications. The trial court sentenced Thacker to a total prison term of twenty-seven years. *State v. Thacker,* 2020 Ohio 4620 (Ohio App. 4th Dist., Sept. 16, 2020). The Fourth District affirmed the conviction and sentence. *Id.*, appellate jurisdiction declined, 161 Ohio St. 3d 1408 (2021).

**Grounds One through Five: Procedurally Defaulted**

Thacker filed a habeas corpus Petition with six grounds for relief (ECF No. 1). The Report concluded that Grounds One through Five were procedurally defaulted because they were not presented to the Supreme Court of Ohio on direct appeal (Report, ECF No. 20, PageID 1758-59). Thacker admits he procedurally defaulted these five claims, but asserts the Court can nevertheless consider them on the merits if he can establish excusing cause and prejudice or that a miscarriage of justice will result if the claims are not addressed on the merits (Objections, ECF No. 24, PageID 1777). He concedes that to satisfy the latter exception, he must show he is actually innocent. *Id.*, citing *Lundgren v. Mitchell,* 440 F.3d 754, 764 (6th Cir. 2006).

Regarding actual innocence, Thacker asserts he has consistently argued since his arrest that he is not guilty of these crimes. (Objections, ECF No. 20, PageID 1778). Unfortunately for Thacker's position, however, a consistent denial of guilt is insufficient to excuse procedural default. Rather, the Supreme Court has limited the actual innocence exception to cases where a habeas petitioner presents new evidence of actual innocence, evidence not heard by the trial jury.

2

> "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met).

*McQuiggin v. Perkins,* 569 U.S. 383, 386-87 (2013). The quality of the evidence required has been spelled out by the Sixth Circuit:

> such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Thacker has presented no new evidence of his actual innocence and thus does not qualify for that exception to procedural default.

Thacker also claims that his attorney's failure to present these claims on direct appeal to the Ohio Supreme Court constituted ineffective assistance of appellate counsel which will also excuse procedural default. The Supreme Court has held that ineffective assistance of appellate counsel will excuse procedural default, but only if it occurs in a proceeding in which a petitioner is constitutionally entitled to the effective assistance of counsel. That does not include appeal to the Ohio Supreme Court. The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no

3

deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Because appeal to the Supreme Court of Ohio is discretionary and not a matter of right, the Sixth Amendment guarantee of effective assistance of counsel does not apply.  To put it another way, even if Thacker's counsel at the Supreme Court level performed in a way that would have counted as ineffective assistance at either trial or on appeal of right, that does not act as excusing cause and prejudice.

Thacker's First through Fifth Grounds for Relief are procedurally defaulted and should be dismissed on that basis.

**Ground Six:  Jury Misconduct**

In his Sixth Ground for Relief, Thacker argues his right to a fair trial was denied because:

**Sub-claim One:**  Juror Hankins who was biased against him participated in deliberating and returning the guilty verdict despite his objection to her sitting; and

**Sub-claim Two:**  the jury considered "evidence" – an unspent shotgun shell – which fell into view when the jury opened the evidence bag containing the victim's urine-soaked sweatpants that police collected at the scene.

These sub-claims require separate analysis.

**Sub-claim One:**  Thacker spends considerable time in his Objections arguing the merits of his claim that Juror Hankins was prejudiced against him (ECF No. 24, PageID 1786-87).  But the

Report did not disagree with Thacker's sub-claim one on the merits. Instead, the Report concluded:

> The claim relating to Juror Hankins is procedurally defaulted because it was not raised on direct appeal to the Fourth District or to the Supreme Court of Ohio. Moreover, it was not included in the Petition and may not be added at the reply stage of the proceedings. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), citing *Tyler v. Mitchell,* 416 F.3d 500, 504 (6th Cir. 2005).

(ECF No. 20, PageID 1766). In his Objections, Thacker makes no attempt to rebut that analysis. He does not cite to any place in his Brief on Appeal to the Fourth District or his Memorandum in Support of Jurisdiction in the Supreme Court of Ohio where he raised that claim. He also does not cite any place in his Habeas Petition where he made that claim, which effectively denied Respondent an opportunity to respond to it. The Magistrate Judge continues to conclude this biased juror sub-claim is procedurally defaulted.

**Sub-claim Two: The Second Shotgun Shell**

Thacker presented his claim regarding the second shotgun shell to the Fourth District as his Sixth Assignment of Error which the court decided as follows:[1]

> {¶41} For his sixth assignment of error, Thacker contends that the trial court erred in failing to declare a mistrial when, during jury deliberations, a shotgun shell, which had not been introduced into evidence, fell from the pocket of the victim's sweatpants, which had been admitted into evidence.
>
> **1. Evidence and Testimony Concerning Shotgun Shell**
>
> {¶42} M.C. [the victim] testified that on the evening of the attack, she was armed with a 20-gauge shotgun and carried it around her house with her from room to room because she was afraid Thacker

---

[1] The relevant portion of the Fourth District's decision is reproduced in full because it contains a number of binding factual findings which Thacker has not attempted to refute.

5

was going to come to her house and harm her. She testified that the shotgun held one shell. She testified that when Thacker finally returned her to her home, she changed out of the sweatpants she was wearing and put on another pair of pants because during the ordeal she had urinated in her sweatpants. Law enforcement collected the urine-soiled sweatpants that she had been wearing and the state introduced the sweatpants into evidence. The victim did not give any testimony about whether she carried a second shotgun shell in her sweatpants pocket, the second shell was not discovered during the investigation, and it was not admitted into evidence.

{¶43} Detective Brad Layman, an investigator for the Lawrence County Sheriff Department, testified that he collected M.C.'s shotgun, which was a Rossi 20-gauge single shot hinge action shotgun, with an external manual safety. Detective Layman inspected the shotgun and found that it contained an unfired Remington shotgun shell, which he removed and preserved. The state introduced both the shotgun and the unspent shotgun shell into evidence.

{¶44} The trial court gave instructions to the jury about the presentation of evidence. The trial court instructed the jury that the attorneys would present evidence and the court would enforce the rules of evidence to determine admissibility. If an objection to certain evidence is sustained, the jury would be instructed to disregard that evidence and draw no inferences from it. The jury was also admonished not to attempt to obtain any additional information about the case outside the courtroom. They were instructed, "You may only consider and decide this case upon the evidence received at the trial. If you acquire any information from an outside source, you must report it to the Court."

{¶45} The trial court also instructed the jury, "Evidence is all the testimony received from the witnesses, any exhibits admitted during trial, facts agreed to by counsel and any facts which the court requires you to accept as true." The jury was instructed to consider the exhibits that had been introduced and whether they are in the same condition as originally taken by police officers.

{¶46} The trial court informed the jury that if they wanted to see the sexual assault kit, the shotgun or the shotgun shell, they could ask the bailiff and those exhibits would be brought into the jury room. During deliberations, the jury requested to see certain medical records that had not been admitted into evidence. The trial court instructed, "In response to your question, be advised that you may

6

only consider the evidence presented at trial. * * * Those matters include * * * the exhibits admitted during the trial."

{¶47} The jury requested a pair of nitrile gloves, which the trial court provided, and they opened the evidence bag containing the urine-soiled sweatpants from which a second, unspent shotgun shell fell. Outside the presence of the jury, the court explained:

> COURT: * * * The jury had sent a request out in writing for a pair of nitrile gloves. I responded affirmatively, had those gloves provided. * * * it was my understanding that after the gloves were given they opened up the evidence bag containing the sweatpants that were admitted into evidence and from within an unspent yellow shotgun shell of twenty gauge caliber fell out onto the floor. And that was then sent via the bailiff from the jury room to the main office of the Court. * * * It is not evidence in this case as it was not individually admitted into the record and shall not come into the record at any point in this case.

Thacker's attorney moved for a mistrial on all counts, "because an unsecured physical object that was not evidence was considered and seen by the jurors uh, outside of the case. Again, it was not admitted as evidence. Uh, I don't think that that can be a bell that's unrung and for that purpose we're gonna move for a mistrial." The trial court denied the motion:

> COURT: * * * I am denying the Motion because I have, I can't reasonably conclude at this point that a shell falling out has any prejudicial effect upon the State or upon the Defendant in this case at this time * * *. I'm assuming that the Motion will be renewed in the event that this is a jury verdict returned in this case and there could be a different result from the Court at that time, but I believe it is premature now with the jury still deliberating and we are having no idea if this is going, mattering at all to the jury. So, the Motion at this time is Denied for Mistrial * * *.

Later in the proceedings, Thacker's attorney renewed his motion for a mistrial:

> DEFENSE: Your Honor, we'd like to move uh, and renew again, our Motion from yesterday for a mistrial on all charges. Uh, as you are aware, the shotgun shell fell out of uh, sweatpants that the sweatpants were the only piece of evidence that was admitted uh, through the case as an

7

> exhibit, as, as uh, evidence. Uh, we believe that the Defendant has been harmed because they saw and considered evidence uh, that had not been admitted properly and we believe that that potentially could affect the outcome of this case.

The state opposed the motion, arguing, "I don't think there's any reason at all, uh, in any, any portion of these proceedings to suggest that the jury * * * for any reason has lost its way or * * * its verdict, whatever it might be, has, has undermined, certainly not by uh, finding an extraneous uh, item uh, during their deliberations." The trial court denied the motion:

> COURT: * * * after the shell was removed, * * * I had law enforcement take it and secure it. It is not with the jury. The jury did not have possession of it. I don't find that that rises to a level of uh, prejudice that would warrant a mistrial to be granted in this case * * *.

Defense counsel did not request a hearing to question the jury about whether they were prejudiced by the momentary presence of the second shotgun shell, the trial court did not *sua sponte* question the jury about it, nor did the trial court repeat its earlier jury instructions about what constituted proper evidence in the case or advise the jury to disregard the second shotgun shell.

**2. Standard of Review**

{¶48} Trial courts are entitled to wide latitude when considering motions for mistrial. State v. Gunnell, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28. "[W]hen a mistrial is premised on the prejudicial impact of improper evidence or argument, the trial court's evaluation of the possibility of juror bias is entitled to 'great deference.' " *Id*. quoting Ross v. Petro, 515 F.3d 653 (6th Cir. 2008). "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." Tingue v. State, 90 Ohio St. 368 (1914), paragraph three of the syllabus. We review a trial court's grant or denial of a motion for mistrial for abuse of discretion, because the trial court is best situated to determine whether a mistrial is necessary. The phrase "abuse of discretion" implies that the court's decision was unreasonable, arbitrary, or unconscionable. State v. Kulchar, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 38.

**3. Extraneous Physical Object in Jury Room**

8

{¶49} Thacker argues that the second unspent shotgun shell was not admitted into evidence but was "considered" by the jury when it fell from the sweatpants and turned over by them to the bailiff. He contends that the trial court was required to conduct an examination of the jury to determine whether the jury's observation of the shell biased the jury, citing *State v. Phillips*, 74 Ohio St.3d 72, 1995-Ohio-171, 656 N.E.2d 643. However, *State v. Phillips* involved a third party's "improper outside communication" with jurors and the hearing that a court conducts to determine whether the communication biased the jury, known as a *Remmer* hearing. *See Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450 98 L.Ed.2d 654 (1954).

{¶50} Here there was no "outside communication" with the jury, no independent outside experimentation or research conducted by the jury, and no threats or bribes of the jury. Rather, a physical object was discovered by the jury and turned over to court personnel. Although Thacker argues that it was "considered" by the jury, he cites nothing in the record to support this allegation and it is entirely speculative. Instead the record shows that the jury followed the trial court's instructions to "consider and decide this case upon the evidence received at the trial. If you acquire any information from an outside source, you must report it to the Court" and "you may only consider the evidence presented at trial. * * * Those matters include * * * the exhibits admitted during the trial." To the extent the second shotgun shell was "information from an outside source," the jury reported it, turned it over to the Court, and did not consider it in their deliberations. "Unless an appellant demonstrates otherwise, we should assume that the members of the jury followed their oaths and deliberated only upon the evidence adduced at trial." *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 32.

{¶51} Even if we assume that the second shotgun shell was an improper communication from an outside source, "'not all communications with jurors warrant a hearing for a determination of bias.'" *State v. Ford,* 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 275, quoting *White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993). "An allegation of an unauthorized communication with a juror requires a *Remmer* hearing only when the alleged contact presents a likelihood of affecting the verdict." *Id.* citing *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997). Here the trial court determined that the second shotgun shell did not present a likelihood of affecting the verdict. The shotgun and the loaded, unspent shotgun shell were both admitted into evidence for the jury's

9

consideration. The jury heard the victim's testimony about her use of the shotgun for personal protection and could inspect the shotgun and one of the two shells. The trial court determined that a second shell falling from the victim's sweatpants is not the sort of "contact" that presents a likelihood of affecting the verdict.

{¶52} Thacker has failed to establish that the momentary presence of the second shell, not marked or admitted into evidence, had any likelihood of affecting the verdict. "[T]he defense must prove that the juror has been biased." *State v. Phillips*, 74 Ohio St.3d 72, 88, 1995-Ohio-171, 656 N.E.2d 643, 661, citing *United States v. Zelinka,* 862 F.2d 92, 95 (6th Cir. 1988); *United States v. Pennell,* 737 F.2d 521, 532 (6th Cir. 1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985) ("In light of *Phillips* [455 U.S. 209, 201 S.Ct. 940, 71 L.Ed.2d 78 (1982)], the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."). Thacker's assertion that the jury was biased is unsupported by the record and is pure speculation. After the trial court informed the parties that the jury discovered a second shell, Thacker did not request a *Remmer* hearing or object to the trial court's decision not to conduct a *Remmer* hearing. Therefore, he has forfeited all but plain error. *State v. Lee,* 10th Dist. Franklin No. 17AP-908, 2018-Ohio-3957, ¶ 26; *State v. Thomas,* 9th Dist. No. 27266, 2015-Ohio-2935, ¶ 53, citing *State v. Wooten,* 5th Dist. Stark No. 2008CA00103, 2009-Ohio-1863, ¶ 38 (applying the plain error doctrine to an argument that the trial court failed to hold *Remmer* hearings when appellant did not challenge such a failure in the trial court). "Plain error is an obvious defect in the trial proceeding that affects substantial rights. The alleged error must have 'substantially affected the outcome of the trial,' such that 'but for the error, the outcome of the trial clearly would have been otherwise.' "(Citations omitted.) *State v. Cepec,* 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 67. Even if we assume that the trial court's failure to conduct a *Remmer* hearing was erroneous, Thacker has failed to establish that it substantially affected the outcome of the trial. Thus, the trial court's failure to hold a *Remmer* hearing did not amount to plain error. After careful consideration of the record, we find nothing unreasonable, arbitrary, or unconscionable about the trial court's denial of Thacker's motion for mistrial.

{¶53} We overrule his sixth assignment of error.

*State v. Thacker, supra.*

As the Report concludes, Thacker's claim regarding the second shotgun shell has shifted

10

over the course of the case. In the trial court Thacker moved for a mistrial without requesting a *Remmer*[2] hearing, apparently on the theory that if any physical object reach the jury which had not been admitted in evidence, he was entitled to a new trial. The Fourth District, noting that Thacker made no request for a *Remmer* hearing, held the applicable standard was abuse of discretion; it found none.

When Thacker appealed to the Ohio Supreme Court, he argued instead that the presence of the second shotgun shell required the trial court to hold a *Remmer* hearing *sua sponte* (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 11, PageID 245). The Ohio Supreme Court declined jurisdiction and Thacker filed here where the second shotgun shell claim has morphed into a *per se* prejudicial effect claim where the jury sees anything not admitted in evidence, including a mute physical object with no accompanying communication.

Thacker's continual change of the substance of this claim violates the exhaustion rule in habeas. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges

---

[2] *Remmer v. United States*, 347 U.S. 227 (1954).

11

> upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Thacker's *per se* extraneous evidence claim is barred by procedural default: it is not the same claim presented to the Ohio courts.

Thacker's *per se* extraneous evidence claim is also without merit because it relies on factual assertions contrary to the findings of the Fourth District. In his Objections, Thacker asserts the "jury collectively examined a shotgun shell, which had not been admitted into evidence" (Objections, State Court Record 24, PageID 1783). The Fourth District found "a physical object was discovered by the jury and turned over to court personnel. Although Thacker argues that it was "considered" by the jury, he cites nothing in the record to support this allegation and it is entirely speculative." *Thacker supra,* at ¶ 50. The Fourth District also found the second shotgun shell was "momentarily present." *Thacker, supra,* at ¶ 52. Thacker presents no evidence of "collective examination." Findings of fact made by the state courts are binding in subsequent habeas litigation unless rebutted by clear and convincing evidence in the record. 28 U.S.C. § 2254(e)(1). Thacker adverts to no evidence that the jury "collectively examined" the second shotgun shell.

Thacker also presents no evidence of prejudicial effect, instead claiming the second shotgun shell was "inherently prejudicial" by its nature. (Reply, ECF No. 18, PageID 1750). How so? Testimony during trial identified the victim as possessing the shotgun and the first shotgun shell; both were already in evidence. If the second shell somehow makes the victim look more aggressive than the shotgun and first shell alone, how is that prejudicial to Thacker?

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 2, 2022.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge
